UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO._____

NOVA CASUALTY COMPANY,

Plaintiff,

v.

SELECTIVE CONSTRUCTION, INC.,
GRIFFIN & WILSON STUCCO, INC.,
CENTEX HOMES, and JIMMIE LEE
WALLACE and MANJIT K. WALLACE,

Defendants.
_____/

COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, NOVA CASUALTY COMPANY (hereinafter referred to as "NOVA"), by and through its undersigned counsel sues SELECTIVE CONSTRUCTION, INC. ("SELECTIVE"), GRIFFIN & WILSON STUCCO, INC. ("GRIFFIN & WILSON"), CENTEX HOMES ("CENTEX"), and JIMMIE LEE WALLACE and MANJIT K. WALLACE ("the WALLACES"), and alleges as follows:

NATURE OF THE ACTION

1. This is an action arising out of a construction defect case for a declaratory judgment regarding the parties' rights and obligations under a liability insurance policy issued by NOVA to SELECTIVE.

JURISDICTION

2. This is an action within the jurisdiction of this Court pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57. The Court has original jurisdiction pursuant to 28 U.S.C. § 1332.

3. Jurisdiction is based on diversity of citizenship.

4. The matter in controversy exceeds $75,000 exclusive of interest and costs.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because at all times material Defendants resided and/or had their principal place of business and/or were transacting

business in this judicial district. Further, the events which give rise to the subject action occurred within this judicial district.

## THE PARTIES

6. At all times material hereto, NOVA was and is a corporation organized and existing under the laws of the state of New York with its principal place of business in the state of New York, and was duly licensed to transact the business of insurance in the state of Florida.

7. At all times material hereto, defendant SELECTIVE was a corporation organized and existing under the laws of Florida, having its principal place of business in Florida with an office at 4018 Lakeside Drive, Tamarac, Florida 33319, and transacting and doing business in Palm Beach County, Florida.

8. At all times material hereto defendant GRIFFIN & WILSON was a corporation organized and existing under the laws of Florida having its principal place of business in Florida with an office at 6825 Vista Parkway North, West Palm Beach, Florida 33411, and transacting and doing business in Palm Beach County, Florida.

9. At all times material hereto defendant CENTEX HOMES was a general partnership organized and existing under the laws of Nevada, with offices in Florida, and transacting and doing business in Palm Beach County, Florida.

10. At all times material hereto defendants WALLACES were residents of Palm Beach County, Florida.

11. Because CENTEX, GRIFFIN & WILSON and the WALLACES are potential third party beneficiaries of any liability coverage found by the court to be owed under the SELECTIVE policy for any of the claims asserted by the WALLACES against GRIFFIN & WILSON, and/or the claims asserted by CENTEX against GRIFFIN & WILSON, they are proper party defendants in this action.

12. All parties having an interest in the declarations and relief sought, and all parties having an interest therein who may be adversely affected thereby, are joined in this action as Defendants.

## THE UNDERLYING LITIGATION

13. CENTEX, a general contractor, and its subcontractor GRIFFIN & WILSON, have been sued by homeowners, the WALLACES, who claim bodily injury and property damage due to allegedly defective work on the WALLACE'S home. CENTEX subcontracted with GRIFFIN & WILSON to do the stucco work on the WALLACES' home. GRIFFIN & WILSON allegedly subcontracted out part of its stucco work to SELECTIVE.

14. The WALLACE'S Suit was filed in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida (case styled <u>Jimmie Lee Wallace and Manjit K. Wallace, as husband and wife, plaintiffs, v. Centex Real Estate Corporation, a foreign corporation, as managing general partner of Centex Homes, a foreign general partnership and for Griffin Construction Enterprises, Inc.,</u>[1] defendants, Case No. 502008 CA 015654. A copy of the First Amended Complaint (the "WALLACE Complaint") filed July 3, 2008, is attached as Exhibit "A."

15. The WALLACE Complaint sues CENTEX for Negligence, Breach of Warranty of Habitability, Unfair and Deceptive Trade Practices, Breach of Contract, and Negligent Misrepresentation.

16. Count X of the WALLACE Complaint sues GRIFFIN & WILSON for negligence[2] and Count XIII is for loss of consortium.

17. GRIFFIN & WILSON filed a Third Party Complaint (Exhibit "B," filed on Feb. 16, 2009) against SELECTIVE seeking common law indemnification, contribution and breach of contract.[3]

18. CENTEX cross-claimed against GRIFFIN & WILSON (Exhibit "C," filed on Oct. 9, 2009), alleging negligence, contractual indemnification and breach of contract.

## THIS CASE

19. GRIFFIN & WILSON alleges that it subcontracted the stucco work on the WALLACE'S home to SELECTIVE. GRIFFIN & WILSON claims, therefore, that NOVA, as SELECTIVE'S insurer, owes GRIFFIN & WILSON a duty of defense and indemnity in the Wallace and Centex lawsuits based on GRIFFIN & WILSON'S claim to be an additional insured under SELECTIVE'S policy.

---

[1] Griffin & Wilson Stucco, Inc. were substituted as the proper party for Griffin Construction Enterprises, Inc..
[2] Count XI against Griffin & Wilson, Breach of Warranty of Habitability, was dismissed.
[3] Selective has not been served to date.

20.     It is NOVA's position that 1) GRIFFIN & WILSON is not an insured under the SELECTIVE policy for the claims made by the WALLACES, nor for the claims made by CENTEX, against GRIFFIN & WILSON; 2) that there is no coverage under the SELECTIVE policy for claims made by the WALLACES and CENTEX against GRIFFIN & WILSON; that there is no coverage for the claims made by GRIFFIN & WILSON against SELECTIVE.

21.     NOVA seeks a declaration that it has no duty to defend nor indemnify GRIFFIN & WILSON in the WALLACE and CENTEX lawsuits; and that NOVA has no duty to defend nor indemnify SELECTIVE in the GRIFFIN Lawsuit, and that NOVA is entitled to rescind the SELECTIVE policy and declare the policy void ab initio.

22.     Therefore, an actual and justiciable controversy exists between the parties and the parties have a bona fide, present need for a declaration as to their rights and obligations under the SELECTIVE policy.

## THE NOVA POLICY

23.     NOVA issued commercial general liability policy 09AL046966 to SELECTIVE CONSTRUCTION, INC., for the policy period 08/23/01 - 02. A certified copy of the policy is attached and incorporated by reference as Exhibit "D."

SECTION I – COVERAGES
COVERAGE A BODILY INJURY AND PROPERTY
DAMAGE LIABILITY

1.  Insuring Agreement

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

    b.  This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

> (2) The "bodily injury" or "property damage" occurs during the policy period; and

SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

   > d. An organization other than a partnership, joint venture or limited liability company, you are an insured. . . .

SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

2. Duties In The Event of Occurrence, Offense, Claim or Suit

   > a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
   >
   > (1) How, when and where the "occurrence" or offense took place;
   >
   > (2) The names and addresses of any injured persons and witnesses; and
   >
   > (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.
   >
   > b. If a claim is made or "suit" is brought against any insured, you must:
   >
   > (1) Immediately record the specifics of the claim or "suit" and the date received; and
   >
   > (2) Notify us as soon as practicable.
   >
   > You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
   >
   > c. You and any other involved insured must:
   >
   > (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
   >
   > (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit";

SECTION V – DEFINITIONS

3.  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

8.  "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

    a.  It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b.  You have failed to fulfill the terms of a contract or agreement;

    if such property can be restored to use by:

    a.  The repair, replacement, adjustment or removal of "your product" or "your work"; or

    b.  Your fulfilling the terms of the contract or agreement.

9.  "Insured contract" means:

    f.  That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

16. "Products-completed operations hazard":

    a.  Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

            (a) When all of the work called for in your contract has been completed.

      (b)    When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      (c)    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    b.    Does not include "bodily injury" or "property damage" arising out of:

      (3)    Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17.    "Property damage" means:

    a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.    All such tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

      . . .

21.    "Your product":

    a.    Means:
      (1)    Any goods or products other than real property, manufactured, sold, handled, distributed or disposed of by:

        (a)    You;

    b.    Includes

      (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product";

22.    "Your work":

        a.    Means:

               (1)    Work or operations performed by you or on your behalf; and

        b.    Includes

               (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work,"

## COUNT I
## NO DUTY TO DEFEND NOR INDEMNIFY GRIFFIN & WILSON

A.    <u>GRIFFIN & WILSON Is Not An Additional Insured</u>

24.    NOVA adopts and realleges paragraphs 1 – 23 and states as follows:

25.    The Additional Insured Endorsement, form CG 20 10 03 97, states:

> ADDITIONAL INSURED — OWNERS, LESSEES OR CONTRACTORS — SCHEDULED PERSON OR ORGANIZATION
>
> The endorsement modfies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> . . .
>
> Who Is An Insured (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

26.    GRIFFIN & WILSON does not fall within the definition of an Additional Insured. Therefore, NOVA has no duty to defend nor indemnify GRIFFIN & WILSON in the Wallace and Centex Lawsuits.

B.    <u>The WALLACE Complaint and CENTEX Cross-claim Fail to Trigger a Duty to Defend</u>

27.    The First Amended Complaint in the Wallace Lawsuit does not require NOVA to defend GRIFFIN & WILSON.

28.     Similarly, the Cross-claim by CENTEX against GRIFFIN & WILSON does not trigger a duty to defend.

29.     The policy applies to "property damage" only if the property damage is caused by an "occurrence." Occurrence is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

30.     Both the WALLACE Complaint and the CENTEX Cross-Claim fail to allege an occurrence, fail to allege an occurrence within the policy period, fail to allege property damage as defined by the policy, and fail to allege damage that occurred during the policy period.

WHEREFORE, Plaintiff NOVA Casualty Company requests this Court find the following:

(a) That GRIFFIN & WILSON STUCCO, INC. is not an Additional Insured under the SELECTIVE policy; and therefore, NOVA has no duty to defend nor indemnify GRIFFIN & WILSON STUCCO, INC. in the WALLACE or CENTEX Lawsuits.

(b) That the WALLACE First Amended Complaint fails to trigger a duty by NOVA to defend GRIFFIN & WILSON; therefore, NOVA has no duty to defend nor indemnify GRIFFIN & WILSON STUCCO, INC in the WALLACE Lawsuit.

(c) That the CENTEX Cross-claim against GRIFFIN & WILSON fails to trigger a duty by NOVA to defend GRIFFIN & WILSON; therefore, NOVA has no duty to defend nor indemnify GRIFFIN & WILSON STUCCO, INC in the CENTEX lawsuit.

Plaintiff NOVA CASUALTY COMPANY further requests this court award judgment against each defendant for the costs of this action and order such further relief as is necessary, just and proper in this case.

## COUNT II
## NO DUTY TO DEFEND NOR INDEMNIFY SELECTIVE

31.     NOVA adopts and realleges paragraphs 1 – 23 and states as follows:

A.      <u>Failure to Cooperate</u>

32.     Under the policy, SELECTIVE is required to cooperate with NOVA in its investigation of this claim.

33. On or about Dec. 17, 2009, NOVA offered to defend SELECTIVE under a reservation of rights. (See Exhibit "E.") NOVA also requested that SELECTIVE provide certain documentation in order for NOVA to properly investigate whether it has a duty to defend SELECTIVE. SELECTIVE has failed to respond in any manner to NOVA's request for information.

34. Therefore, SELECTIVE is in breach of its obligations under the policy and NOVA can have no duty to defend nor indemnify SELECTIVE in the GRIFFIN Lawsuit.

B.  <u>GRIFFIN'S Third Party Complaint Fails to Trigger a Duty to Defend</u>

35. Further, the GRIFFIN Third Party Complaint does not require NOVA to defend SELECTIVE.

36. The policy applies to "property damage" only if the property damage is caused by an "occurrence." Occurrence is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

37. The Griffin Complaint fails to allege an occurrence; fails to allege an occurrence within the policy period, fails to allege property damage as defined by the policy, and fails to allege damage that occurred during the policy period.

WHEREFORE, Plaintiff NOVA CASUALTY COMPANY requests this Court find the following:

a) That SELECTIVE has failed to cooperate with NOVA; therefore, NOVA has no duty to defend nor indemnify SELECTIVE in the suit filed by GRIFFIN & WILSON.

b) That the GRIFFIN Third Party Complaint fails to trigger a duty by NOVA to defend SELECTIVE; therefore, NOVA has no duty to defend nor indemnify SELECTIVE in the Griffin Lawsuit.

Plaintiff NOVA CASUALTY COMPANY further requests this court award judgment against each defendant for the costs of this action and order such further relief as is necessary, just and proper in this case.

COUNT III
THE POLICY EXCLUDES COVERAGE FOR CLAIMS MADE AGAINST GRIFFIN & WILSON
IN THE WALLACE COMPLAINT AND CENTEX CROSS-CLAIM

38. NOVA adopts and realleges paragraphs 13 - 22 and states as follows:

39. The policy precludes coverage for the damages alleged by the WALLACES, and for the damages alleged by CENTEX and GRIFFIN & WILSON based on the following exclusions and policy defenses.

A. <u>Policy Exclusions</u>

40. SECTION I – COVERAGES, 2. Exclusions, states:

This insurance does not apply to:

Exclusion a.  Expected Or Intended Injury:

> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

Exclusion b.  Contractual Liability:

> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
>
> (1) That the insured would have in the absence of the contract or agreement; or
>
> (2) Assumed in a contract or agreement that if an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or fore a party other than an insured are deemed to be damages because of "bodily injury" or "property damage," provided:
>
>> (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and
>>
>> (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

Exclusion j. Damage To Property:

"Property damage" to:

> (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>
> (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
> . . .
>
>> Paragraph (6) of this exclusion does not apply to "property damage" included in the "products – completed operations hazard."

Exclusion k.   Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

Exclusion l.   Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a sub-contractor.

Exclusion m.   Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)   A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(c)   A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

Exclusion n. Recall of Products, Work Or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

    (1)    "Your product";

    (2)    "Your work"; or

(d)    "Impaired property";

If such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or a dangerous condition in it.

41.    Form NGL-0033 (09/99):

NOVA Casualty Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

EXCLUSION – DESIGNATED WORK

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Section I – Coverages

Coverage A Bodily Injury and Property Damage Liability

2.    Exclusions

This insurance does not apply to the following Designated Work:

1.    The design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair, including remodeling, service, correction, or replacement, of an "exterior insulation and finish system" (commonly referred to as synthetic stucco) or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulkings or sealants in connection with such a system.

2.    Any work or operations with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system" is used on any part of that structure.

This exclusion applies to "your work" described in Paragraph 1 or Paragraph 2 above performed by you or on your behalf.

For the purposes of this endorsement, an "exterior insulation and finishing system" means an exterior cladding or finish system used on any part of any structure, and consisting of:

    a)    A rigid or semi-rigid insulation board made of expanded polystyrene or other materials, and

    b)    the adhesive and/or mechanical fasteners used to attach the insulation board to the substrate, and

    c)    a reinforced base coat, and

    d)    a finish coat providing surface texture and color.

42. Endorsement CG 21 49 09 99 entitled "TOTAL POLLUTION EXCLUSION ENDORSEMENT." This endorsement states in relevant part as follows:

This insurance does not apply to:

f.    Pollution

(1)    "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

(2)    Any loss, cost or expense arising out of any:

    (a)    Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or…

B.    <u>No Coverage For Attorney's Fees</u>

43. Claims for attorney's fees in the WALLACE Complaint, the CENTEX Counterclaim and the GRIFFIN & WILSON Third party Complaint do not fall within the definition of property damage. Therefore, there is no coverage under the SELECTIVE policy for attorney's fees.

C.    <u>Vicarious Liability</u>

44. If this Court finds that GRIFFIN & WILSON is an additional insured and that coverage exists under the SELECTIVE policy, then any coverage that exists under the policy provides coverage for GRIFFIN & WILSON'S vicarious liability only.

WHEREFORE, NOVA Casualty Company respectfully requests this Court find the following:

   (a) The policy excludes coverage for the claims in the WALLACE, CENTEX and GRIFFIN Lawsuits.

   (b) Alternatively, the policy provides coverage for GRIFFIN & WILSON's vicarious liability only.

Plaintiff NOVA Casualty Company further requests this court award judgment against each defendant for the costs of this action and order such further relief as is necessary, just and proper in this case.

## COUNT IV - RESCISSION

45. NOVA adopts and reavers the allegations contained in paragraph 13 through 22, and further states:

46. Under 627.409, Fla. Stat., an insurer is entitled to rescind a policy based on an omission, and/or incorrect statement, and/or misstatement by or on behalf of the insured in its application for insurance.

   A. <u>Misrepresentations As To SELECTIVE'S Business Operations</u>

47. On or about 08/22/01, SELECTIVE submitted an Application for insurance to NOVA. (A copy attached as Exhibit "F," the "Application.") The Application was signed by Javier Hernandez on behalf of SELECTIVE.

48. The first page of the Application contains a section entitled "DESCRIPTION OF OPERATIONS." The handwritten response states "Plaster/Stucco."

49. The first page also contains a section entitled "PAYROLL DEVELOPMENT." The handwritten response to "A" regarding "Officers or Partners or Proprietors," is "1." The response to "B" regarding "Employees or Leased Employees," and "C" 'Clerical Duties Only, is marked with a slash, indicating none. The response to "Gross Payroll" is $20,000. (See Exhibit "F.")

50. NOVA thereafter issued and delivered a Commercial General Liability policy to SELECTIVE for the policy period 8/23/01 – 02 in reliance on the Application including, but not limited to, the responses described in the paragraphs above.

51. In contrast to the information the application, SELECTIVE did have employees and/or leased employees. Additionally, SELECTIVE had a gross annual payroll in excess of $20,000.

52. The failure to disclose that SELECTIVE had employees or leased employees, and had a gross annual payroll in excess of $20,000, was an omission, and/or incorrect statement, and/or misstatement that was material to NOVA's acceptance of the risk and/or to the hazard assumed by NOVA in issuing the policy. If the fact of having employees or leased employees, and the correct annual payroll had been disclosed, NOVA in good faith would not have issued the policy or would have issued the policy at a substantially higher premium.

B.  Misrepresentation Of Broker On Application

53. SELECTIVE'S application for insurance was submitted to NOVA by AALFA Insurance Consultants, Inc. ("AALFA"), and allegedly signed by Florida licensed broker Daniel Glantz. (See Exhibit "F.")

54. However, NOVA discovered that Daniel Glantz does not and never has worked for AALFA. Further, Glantz never authorized AALFA to use his signature and broker's license for any purpose, including the submission of the SELECTIVE insurance Application to NOVA.

55. SELECTIVE knew or should have known that Daniel Glantz' signature on the Application for insurance was forged.

56. NOVA had no knowledge that Daniel Glantz' signature on the SELECTIVE Application was unauthorized and not the actual signature of Glantz. Had NOVA known the truth that the broker's signature was forged, NOVA in good faith would not have issued the SELECTIVE policy.

C.  Misrepresentation Of Broker On NOVA's Broker Application/Agreement

57. Additionally, on or about May 20, 2000, AALFA, through its principal, Jacqueline Alfaro, submitted an Agency Application to NOVA. (A copy of the Application attached as Exhibit "G.")

58. On pages 3 and 4 of the Application, Alfaro represented that Daniel Glantz was a Florida licensed agent working for AALFA.

59. On page 5, Daniel Glantz' alleged signature appears under the APPLICATION FOR APPOINTMENT.

60. A Brokering Agent Agreement was purportedly signed by Daniel Glantz as Brokering Agent for AAFLA. (A copy of the Agency Agreement and Brokering Agent Agreement attached as Exhibit "H.")

61. Daniel Glantz has never worked for AALFA, nor did he ever authorize the use of his name and license number to AALFA for any purpose.

62. NOVA had no knowledge that the signature on the Brokering Agent agreement purportedly to be Daniel Glantz' signature was in fact not Glantz' signature, and was unauthorized and forged. Had NOVA known the truth that AALFA forged Daniel Glantz' signature for the purpose of obtaining a brokering agreement with NOVA, NOVA would not have entered into the broker agreement and would never have issued the SELECTIVE policy.

WHEREFORE, Plaintiff NOVA, respectfully requests that this Court find the following:

(a) That SELECTIVE'S representations as to the number of employees and/or gross payroll was an incorrect statement/misstatement/misrepresentation which was material to NOVA's acceptance of the risk; and therefore, NOVA is entitled to void and rescind the SELECTIVE policy ab initio.

(b) That the forged signature of the broker on the SELECTIVE application was a misrepresentation which was material to NOVA's acceptance of the risk; and therefore, NOVA is entitled to void and rescind the SELECTIVE policy ab initio.

(c) That the Broker's Agreement obtained by AALFA with NOVA was a material misrepresentation; and therefore, NOVA is entitled to void and rescind the SELECTIVE policy ab initio.

Plaintiff NOVA Casualty Company further requests this court award judgment against each defendant for the costs of this action and order such further relief as is necessary, just and proper in this case.

        WALTON LANTAFF SCHROEDER & CARSON
        Attorneys for NOVA Casualty Company
        1700 Palm Beach Lakes Blvd., Suite 700
        West Palm Beach, FL 33401
        Tel:    561/689-6700
        Fax:   561/689-2647

        By:   /s/ David S. Tadros
              David S. Tadros, Esq.
              FB #956015
              dtadros@waltonlantaff.com

C097.18 #38